UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 23-3152
(No. 21-cr-00542-TJK-1)

———————————

UNITED STATES OF AMERICA,            Appellee,

v.

JONATHAN OWEN SHROYER,            Appellant.

## APPELLEE'S REPLY IN SUPPORT OF MOTION TO DISMISS APPEAL

Appellant Jonathan Owen Shroyer agreed to waive "the right to appeal the sentence in this case, including but not limited to any term of imprisonment" (ECF 38 at 7). He also agreed to waive the right to appeal "the manner in which the sentence was determined" (*id.*). Shroyer received benefits in return for these promises, including the dismissal of the remaining charges against him (*id.* at 2; Sentc'g Hr'g Tr. at 51:21-52:4), and a two-point reduction to his offense level for acceptance of responsibility under the U.S. Sentencing Guidelines (ECF 38 at 3; Sentc'g

Hr'g Tr. at 7:4-16).[1] Notwithstanding the plain terms of the plea agreement, Shroyer now attempts to appeal his within-Guidelines sentence of 60 days' incarceration.

This Court should hold Shroyer to his agreement. In his opposition to the government's motion to dismiss, Shroyer merely retreads the same First Amendment arguments that he made in moving for release pending appeal. As already explained in the government's motion to dismiss, those arguments are incorrect and do not justify an exception to the appeal waiver. This Court should enforce the waiver and dismiss this appeal.

## REPLY ARGUMENT

Shroyer does not contest that he knowingly, intelligently, and voluntarily agreed to waive his right to appeal, nor does he contend that his arguments on appeal fall outside the waiver's scope. *See United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016) (this Court will "ordinarily dismiss an appeal falling within the scope" of an appeal waiver to which the appellant knowingly, intelligently, and voluntarily agreed). Instead,

---

[1] The sentencing hearing transcript is attached as an exhibit to our motion to dismiss.

2

Shroyer seeks an exception to the waiver because, he claims, the district court relied in part on his speech in sentencing him. This Court has suggested that an exception to a valid waiver might be justified in shocking circumstances, such as where a defendant "colorably alleged" that his or her sentence "rest[ed] upon a constitutionally impermissible factor, such as the defendant's race or religion." *United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009). To the extent a sentence based on protected speech could, in some circumstances, warrant an exception to a valid appeal waiver, this case is not one of those circumstances.

Far from colorably alleging that his First Amendment rights were violated, Shroyer argues for legal standards that conflict with this Court's precedent. He claims that protected speech should "never" be considered "relevant offense conduct" at sentencing (Opposition at 1-2; see also *id.* at 5 ("Placing ***any*** weight on protected speech when imposing [a] sentence ought to send alarms blaring in every appellate court in the land.")). In Shroyer's view, courts may consider speech only if the speech itself is a crime, or if it is evidence of an element of a crime (*id.* at 1-2, 6-7, 13-17).

Contrary to Shroyer's claims, it is well established that a court may consider a defendant's speech at sentencing so long as that speech is relevant to legitimate sentencing considerations. *See Dawson v. Delaware*, 503 U.S. 159, 165 (1992) ("[T]he Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment."); *United States v. Williamson*, 903 F.3d 124, 136 (D.C. Cir. 2018) (district court properly considered at sentencing the defendant's "ostensibly First Amendment-protected" speech because it "established a pattern of disturbing conduct that worsened over time, bearing on both the seriousness of his offense and on the need to protect the public"). Thus, at sentencing, the district court properly considered that Shroyer "amp[ed] up the crowd" *while* he committed his offense, and at times expressed pride and not remorse for his actions (Sentc'g Hr'g Tr. at 44). As explained in the government's motion to dismiss, these facts are relevant to legitimate sentencing considerations, including the nature and circumstances of the offense and the need for deterrence (Motion to Dismiss at 16-19). Shroyer offers no

4

response other than to claim that the district court may not consider his speech at all.

Shroyer also incorrectly argues that he was "sen[t] . . . to prison for uttering political opinions," and that the district court "disagreed" that he "had every right to hold opinions Government officials might regard as heterodoxic, even wrong" (see Opposition at 2-3; see also *id.* at 21 (arguing that Shroyer has the right to believe and assert whatever chooses to believe in)). These claims are not supported by the record. Shroyer's sentence of imprisonment was heavily influenced by the fact that Shroyer violated his deferred prosecution agreement by trespassing at the Capitol on January 6 (Sentc'g Hr'g Tr. at 40:16-23; see also ECF 58 at 6 n.2 (district court explaining it "would have sentenced Shroyer to a term of imprisonment even if it could not consider any of his speech-related conduct, largely because in committing his offense on January 6, he violated his deferred prosecution agreement, which underscored the need to deter him from engaging in additional criminal conduct")). Further, the district court expressly agreed that "Mr. Shroyer or any American has the right to believe and say things" like the election was stolen (Sentc'g Hr'g Tr. at 12:7-16; see also *id.* at 41:3-4 ("There's nothing

5

wrong with the phrase '1776.'"). The court did not punish Shroyer for his beliefs, but rather looked to his statements on January 6 and afterwards to inform the nature and circumstances of the offense and the need for deterrence (*id.* at 40:8-44:22). Thus, Shroyer's speech during and after his offense was "relevant to determining an appropriate sentence," and the district court properly considered it. *Williamson*, 903 F.3d at 136.

Shroyer faults the government for relying on his speech before January 6 (Opposition at 4-8), but he does not argue that the court considered that speech in sentencing him (*id.* at 5, 8). Because the court did not take pre-January 6 statements into account (see Sentc'g Hr'g Tr. at 12:17-13:9, 44), the government's arguments at sentencing about those statements are irrelevant to whether the district court erred (see also Motion to Dismiss at 19-20). In any event, the government did not seek to punish Shroyer for his speech in the abstract (cf. Opposition at 6-8). Rather, the government invoked Shroyer's speech before January 6 because it informed the need for deterrence and showed that Shroyer acted intentionally (Sentc'g Hr'g Tr. at 13-14). The district court disagreed, and thus this Court need not reach the issue.

Finally, Shroyer maintains that the use of his speech during sentencing is akin to a court's reliance on acquitted offense conduct, which, according to Shroyer, invades "the right to due process and the Fifth Amendment's presumption of innocence" (Opposition at 23-24; *id.* at 20). Shroyer's attempted analogy fails because it conflicts with established law—a sentencing judge in this Circuit may consider acquitted conduct at sentencing. *United States v. Settles*, 530 F.3d 920, 923-24 (D.C. Cir. 2008); *see also United States v. Khatallah*, 41 F.4th 608, 651 (D.C. Cir. 2022) (Millett, J., concurring) (recognizing that *Settles* remains good law). Moreover, as noted in the Government's motion to dismiss, Shroyer's speech on January 5 and 6 is expressly part of the statement of offense that formed the basis for his guilty plea (Motion to Dismiss at 21 n.7 (citing ECF 39)).

Shroyer has not colorably alleged that the district court erred, much less that that any error was so shocking that his appeal waiver should be disregarded. This Court should enforce the waiver and dismiss this appeal.[2]

---

[2] The fact that Shroyer has already filed his principal brief on appeal does not change this outcome. The government should receive the benefit of

(continued . . . )

7

## Conclusion

WHEREFORE, the government respectfully requests that the Court enforce the plea agreement and dismiss Shroyer's appeal.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
ELIZABETH H. DANELLO
Assistant United States Attorneys

                /s/                
MARY C. FLEMING
D.C. Bar # 1048019
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Mary.Fleming@usdoj.gov
(202) 252-6829

---

its bargain and not be required to respond. *See United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997) ("Requiring the government to file an appeal brief even though there is an appeal waiver substantially diminishes the value of the waiver to the government, and by extension to defendants . . . .").

## CERTIFICATE OF COMPLIANCE WITH RULE 27(d)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this reply in support of appellee's motion to dismiss the appeal contains 1,361 words, and therefore complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This reply has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
MARY C. FLEMING
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing reply to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Norman Pattis, Esq., on this 27th day of November, 2023.

/s/
MARY C. FLEMING
Assistant United States Attorney